Anthony A. BUFORD, Jr.

v.

**WILMINGTON TRUST COMPANY.**

Civ. A. No. 86–6450.

United States District Court,
E.D. Pennsylvania.

March 4, 1987.

Robert P. Frutkin, Berger & Montague, P.C., Philadelphia, Pa., for plaintiff.

Lawrence Nathanson, Drinker, Biddle & Reath, Philadelphia, Pa., for defendant.

## MEMORANDUM

NEWCOMER, District Judge.

This is an action for breach of contract and for fraud, arising from the sale of a business. On April 19, 1984, the parties executed an "Agreement and Plan of Reorganization" ("Agreement"), a copy of which is attached to the Affidavit of Joseph M. Moran as Exhibit A. Under the agreement, plaintiff agreed to transfer 100 percent of the outstanding capital stock of the Pennsylvania Group, Incorporated ("Penn Group"), which operated a retail discount brokerage business in Bala Cynwyd, Pennsylvania, to the defendant. Agreement ¶ 1.01. In exchange, defendant agreed to transfer to plaintiff the number of shares in Wilmington Trust Company common stock having an aggregate fair market value of $600,000.00. Agreement ¶ 1.02. In addition, defendant agreed that plaintiff would receive additional shares of defendant's common stock based on a formula contained in ¶ 9.07(a) of the agreement. *Id.* The formula made the amount of additional compensation contingent on the gross revenue obtained from the transferred business in fiscal years 1985 and 1986, the two years following the Agreement. *Id.*

Paragraph 9.07(b) provides for a procedure by which information concerning gross revenue for the two fiscal years shall be communicated:

(b) After the end of each of the fiscal periods which the 1985 and 1986 Gross Revenue relate, Purchaser shall certify to the Seller on the Payment Date the amount of Gross Revenues for the immediately preceeding fiscal period. Seller shall be entitled, for a period of 30 days after his receipt of the certification of Gross Revenues, to have access to those books and records of Purchaser that he may reasonably request in order to verify the accuracy of said amount; provided, however, that Seller hereby agrees to maintain any information obtained during the course of such investigation in strict confidence. In addition, Purchaser hereby agrees to advise Seller on a monthly basis during such periods of the Purchaser's estimate of the amount of monthly Gross Revenues.

I now have before me cross-motions for summary judgment on the issue of whether the defendant fulfilled its obligations under ¶ 9.07(b). *See* Complaint, Count III at ¶¶ 31–35.

Under ¶ 9.07(b), defendant was required to certify to plaintiff gross revenues from the operation of the transferred business for fiscal 1985 and 1986. Plaintiff is then entitled, "for a period of 30 days after his receipt of the certification of Gross Revenues, to have access to those books and records ... that he may reasonably request to verify the accuracy of said amount." Plaintiff seeks to have the court order defendant to allow plaintiff access to defendant's books and records in order to verify the gross revenue figures supplied by defendant. Compalint, Prayer for Relief ¶ A.

Defendant certified to plaintiff the gross revenues for fiscal 1985 on August 22, 1985. Moran Aff. ¶ 4 and Exhibit B thereto. On May 12, 1986, plaintiff's counsel first requested information and documentation concerning 1985 gross revenues, and also concerning all monthly estimates to that date of 1986 gross revenues. Affidavit of Robert P. Frutkin attached to plaintiff's motion for summary judgment, ¶ 3 and Exhibit A attached thereto; Moran Aff. ¶ 5 and Exhibit C thereto. After receiving no response to the May 12, 1986 letter, plaintiff's counsel reiterated his request for the information and supporting documents on July 16, 1986. Frutkin Aff.

¶ 4 and Exhibit B attached thereto; Moran Aff. ¶ 6 and Exhibit D attached thereto.

On August 7, 1986, defendant certified to plaintiff the gross revenues for fiscal year 1986. Moran Aff. ¶ 7 and Exhibit E attached thereto. After receiving that certification, plaintiff did not request to inspect the relevant documents supporting the calculation of the 1986 figures. Moran Aff. ¶ 8. Finally, on August 25, 1986, defendant denied plaintiff's requests for documents pertaining to the 1985 figures, contained in his counsel's letters of May 12, 1986 and July 16, 1986. Frutkin Aff. ¶ 5 and Exhibit C attached thereto.

■ The legal standard to be applied to motions for summary jdugment is contained in Fed.R.Civ.P. 56(c):

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

*See Celotex Corp. v. Catrett,* 477 U.S. ——, ——, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265, 273–74 (1986). In cases involving interpretation of a contract, summary judgment is clearly appropriate if the meaning of the contract is unambiguous. *See County of Erie v. American States Insurance Co.,* 573 F.Supp. 479, 483 (W.D. Pa.1983), *aff'd,* 745 F.2d 45 (3rd Cir.1984).

The interpretations of a contract is for the court in the first instance. As Judge Weber summarized in *County of Erie, supra:*

> The Court's duty is to ascertain the intent of the parties as manifested in the language of the agreement. Moreover, the court should read such provisions to avoid ambiguities, if the plain language of the contract permits. The ambiguity of a written contract is a matter of law to be decided by the court.... If there is more than one permissible inference as

to the intent to be drawn from the language employed, the question of the parties' actual intention is a triable issue of fact. But conflicting conclusions as to the interpretations of a written contract which is clear and unambiguous as to its terms will not create a material issue of fact to bar disposition by summary judgment.

*Id.* (Citations Omitted.)

■ The contract provision at issue in this case unambiguously expressed the intention that the plaintiff be limited to the thirty days following certification of gross revenues in which to request documentation supporting the amounts certified by defendant. Paragraph 9.07(b) ensures that any disputes concerning the gross revenues of the Bala Cynwyd business of defendant be resolved promptly so as not to impede the conduct of the parties' business long into the future. This is a rational and reasonable goal for the parties to pursue. I can perceive no other reasonable interpretation of that provision, and hence no ambiguity as to its meaning. Furthermore, the uncontradicted evidence before the court shows that at no time within 30 days after the certification of gross revenues for either fiscal 1985 or 1986 did plaintiff request information to support the amounts stated.

Plaintiff is therefore not entitled under paragraph 9.07(b)[1] to the information he seeks. Plaintiff's motion will be denied; defendant's will be granted.

An appropriate order follows.

---

1. In so ruling, I do not mean to foreclose the possibility that some of the information which would have been available to plaintiff upon a timely request will also be obtainable through discovery. Whether any such information may properly be obtained is not before the court at this time.